**NOT FOR PUBLICATION**                                                    [41,44]


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :
SLIM CD, INC.,                      :           Civil Action No. 06-2256
                                    :
             Plaintiff,             :           **OPINION**
       v.                           :
                                    :
HEARTLAND PAYMENT SYSTEMS,          :
INC.,                               :
                                    :
             Defendants.            :
_____:


**WOLFSON, UNITED STATES DISTRICT JUDGE**

       Presently before the Court is Defendant's Motion to Dismiss Counts Three and Five of

Plaintiff's Amended Complaint as well as Plaintiff's Motion to Strike or Dismiss Defendant's

Answer and Counterclaims.  The instant motions arise out of a dispute over an agreement

pursuant to which Slim CD Inc. ("Slim CD") was to develop and deliver software to Heartland

Payment Systems Inc. ("Heartland"). The Court has considered the moving, opposition and reply

papers, and for the reasons stated in the opinion below, Defendant's Motion is denied and

Plaintiff's Motion is denied in part and granted in part.

**I. Background**

Slim CD, a Florida Corporation, develops software for processing credit card transactions over the internet and end-user software that accepts credit card transactions.  Plaintiff's Amended Complaint ("Pl's Am. Compl.") ¶ 1.  Plaintiff also provides software "toolkits" that allow software developers to create custom applications for merchants of all sizes.  Id.  Heartland, a Delaware corporation with its principal place of business in New Jersey, provides credit card processing and payroll solutions to restaurant, hotel and retail merchants.  Defendant's Amended Answer ("Def's Am. Ans.")  ¶ 102.  In addition, Heartland sells and rents point of sale devices and provides other services such as gift and loyalty card programs to its clients.  Id.

In or around May 13, 2005, the parties entered into a Software Development and License Agreement ("Agreement") pursuant to which Slim CD was to "modify and rebrand" the existing Slim CD software for Heartland, to install this software on Heartland's equipment, to grant Heartland a license to the installed gateway, to develop and license to Heartland a gift card platform and software developer toolkits and to grant certain licenses to Heartland for desktop and virtual terminal products.  Bonfield Decl, ex. 2.  In return, Heartland promised to pay Slim CD a total of $2.5 million for these products; specifically, the Agreement provided that after an initial payment of $500,000, Heartland would be responsible for four installment payments of $500,000 to be paid following the delivery of the applications and services in four phases.  Id.

Subsequently, Slim CD alleges that although it abided by all the provisions in the Agreement and timely delivered all four phases of the software set forth in the Agreement, Heartland did not deliver on its promises.  Pl's Am. Compl. ¶ 25.  Indeed, Slim CD contends that it delivered the first phase on or about June 15, 2005, the second and third phases on or about

2

July 14, 2005, and the fourth phase on or about October 13, 2005. Id. In contrast, however, Slim CD alleges that Heartland breached the Agreement in numerous respects. Specifically, Slim CD contends that Heartland did not properly accept or reject the software delivered and that Heartland unreasonably withheld acceptance of the software. Id. ¶ 27. Further, Slim CD contends that Heartland has failed to pay Slim CD the final two installments due under the contract and thus owes Slim CD $1,000,000. In light of these breaches, Slim CD filed a Complaint against Heartland on May 16, 2006, and, subsequently, an Amended Complaint on January 23, 2007, setting forth five causes of action including: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Tortious Interference with Prospective Economic Advantage; (4) Unjust Enrichment; and (5) Misappropriation of Trade Secrets.

In response to the Amended Complaint, Heartland filed an Amended Answer and Counterclaims on February 7, 2007, denying Plaintiff's Claims in their entirety and setting forth Twelve Counterclaims including: violation of the Computer Fraud and Abuse Act (Count One), Breach of Contract (Count Two), Conversion (Count Three), Fraud (Count Four), Negligent Misrepresentation (Count Five), Unfair Competition (Count Six), Breach of Implied Covenant of Good Faith and Fair Dealing (Count Seven), Violation of the New Jersey Consumer Fraud Act (Counts Eight and Nine), violation of the New Jersey Computer Fraud and Abuse Act (Count Ten), Misappropriation of Trade Secrets (Count Eleven) and Equitable Fraud (Count Twelve). Specifically, Heartland contends that on or about July 26, 2005, Slim CD began to install the software on Heartland's system so that Heartland could begin testing phases I and II of the system. Def's Am. Ans. ¶ 113. Thereafter, Heartland alleges that on November 25, 2005, Slim CD improperly accessed Heartland's servers to install an unauthorized "Spyware" program on

3

Heartland's systems that would direct each transaction to a Slim CD server. Def's Am. Ans. ¶ 114 -117.  Indeed, Heartland contends that although Slim CD agreed to develop software for Heartland that would not require or permit Slim CD to access the transactional data, Slim CD "covertly installed a secret and unauthorized 'Spyware' program on Heartland's servers that directed customer's data to a Slim CD server before allowing Heartland to process the transaction." Id.  As a result, Heartland alleges that Slim CD captured and accessed customer data from Heartland's terminals.  Id. ¶ 117.  Moreover, Heartland contends that although it paid $1.5 million under the Agreement before it learned of Slim CD's alleged breach, as a result of the breach, Heartland could no longer trust Slim CD or its products and had to find an alternative to the Slim CD software.

Following the filing of its Amended Answer and Counterclaims, Heartland filed a Motion to Dismiss Counts Three and Five of Plaintiff's Complaint on February 23, 2007.  Subsequently, on March 9, 2007, Plaintiff filed a Motion to Strike or Dismiss Defendant's Amended Answer and Counterclaims. These motions are the subject of the instant opinion.


**II. Discussion**


A. Heartland's Motion to Dismiss Counts Three and Five of the Amended Complaint

Defendant asks this Court to dismiss two of five counts contained in Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(c).  The standard that a court applies on a motion for judgment on the pleadings pursuant to Rule 12(c) is the same standard that a court applies in deciding a motion to dismiss pursuant to Rule 12(b)(6). Turbe v. Government of Virgin Islands,

938 F.2d 427 (3d Cir. 1991); see also Spruill v. Gillis, 372 F.3d 218, 223 n. 2 (3d Cir.2004). In

reviewing a motion to dismiss on the pleadings, a Court must take all allegations in the

Complaint as true, viewed in the light most favorable to the plaintiff. See Gomez v. Toledo, 446

U.S. 635, 636 n. 3 (1980); Robb v. Philadelphia, 733 F.2d 274, 277 (3d Cir.1984). If no relief

could be granted under any set of facts that could prove consistent with the allegations in the

Complaint, the Court may dismiss the Complaint for failure to state a claim. See Hishon v.

Spalding, 467 U.S. 69, 73 (1984); Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir.1986).

Recently, in Bell Atlantic Corporation v. Twombly, the Supreme Court clarified the Rule

12(b)(6) standard. 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language

contained in Conley v. Gibson, 355 U.S. 41, (1957), that "a complaint should not be dismissed

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim, which would entitle him to relief." Id. at 1968 (citing Conley, 355

U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough

to raise a right to relief above the speculative level." Id. at 1965. Thus, while a a complaint does

not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." Twombly, 127 S.Ct. 1955, 1964-1965 (2007).


I. Count Three: Tortious Interference With Prospective Economic Advantage

In Count Three of the Complaint, Plaintiff sets forth a claim for tortious interference with

prospective economic advantage.  New Jersey recognizes this cause of action as separate and

distinct from tortious interference with an existing contract. Printing Mart-Morristown v. Sharp

Electronics Corp., 563 A.2d 31, 36 (N.J. 1989).  Rather than proving the existence of a contractual relationship, plaintiff must instead allege facts "giving rise to some 'reasonable expectation of economic advantage.'" Id. at 37 (citing Harris v. Perl, 197 A.2d 359 (N.J.1964)). Also, rather than alleging that the interference caused the breach or loss of the contract, the plaintiff must allege that, but for the interference, there was a reasonable probability that the plaintiff would have received the anticipated economic benefit. Printing Mart-Morristown, 563 A.2d at 37.  Indeed, to succeed on a claim for tortious interference with prospective economic advantage, a plaintiff must establish that: (1) a claimant has reasonable expectation of an economic benefit; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) in the absence of interference, the reasonable probability that the claimant would have received the anticipated economic benefit; and (5) damages resulting from the defendant's interference. Lucas Industries Inc., v. Kendiesel, Inc., 1995 WL 350050 (D.N.J. June 9, 1995); Fineman v. Armstrong World Industries, Inc., 980 F.2d 171, 186 (3d Cir. 1992); see also Pinnacle Choice, Inc. v. Silverstein, 2007 WL 2212861, at *3 (D.N.J., July 31, 2007).

     In the instant matter, Plaintiff alleges that in or about 2005, Slim CD had an expectation that it could sell all or part of the company to a successor or potential acquirer.  Pl's Compl. at ¶ 58.  Moreover, Plaintiff alleges that Slim CD had knowledge of such expectations because Slim CD representatives notified Heartland that "Heartland's failure to accept Slim CD's software and satisfy other provisions of the Contract threatened to undermine the sale of all or part of Slim CD to a successor or potential acquirer." Id. ¶ 59.  Thus, Slim CD contends that Heartland caused Slim CD to suffer substantial monetary damages associated with this potential sale by

6

wrongfully, intentionally and maliciously "expressing indifference to Slim CD's notices regarding such potential sale" and by "persist[ing] in their refusal to formally accept the software." Id. ¶ 60 - 62.

Defendant, on the other hand, argues that Plaintiff's Claim for tortious interference must be dismissed because it is not pled with sufficient specificity. Specifically, Defendant contends that Slim CD failed to identify the transaction with which Heartland allegedly interfered and that Slim CD did not provide any facts to establish that the company would have been sold in the absence of Heartland's alleged interference. Plaintiff, on the other hand, argues that the Complaint meets the liberal notice pleading standard set forth in Fed. R. Civ. P. 8. The Court agrees.

To begin, the Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). The fundamental function of a federal pleading is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1182 (3d ed.2004). Notice pleading merely requires a plaintiff to provide an adversary with fair notice of a claim and the grounds on which that claim is based. Kanter v. Barella, 489 F.3d 170 (3d Cir. 2007).

In light of the pleadings, the Court finds that Plaintiff has satisfied the liberal notice pleading standards set forth in Fed. R. Civ. P. 8.

Moreover, although earlier cases in this district required plaintiffs to plead with sufficient specificity the prospective economic advantage with which a defendant allegedly interfered, recent cases have not required such specificity.  In <u>Lucas Industries v. Kendiesel</u>, 1995 WL 350050 (D.N.J. 1995), and <u>Storis Inc. v. Gers Retail Systems, Inc.</u>, 1995 WL 337100 (D.N.J. 1995), the Honorable Alfred M. Wolin held that in order to set forth a claim for tortious interference with prospective economic advantage, a plaintiff must at least "allege specific prospective contracts that were interfered with" by the defendant.  <u>Lucas Industries</u> at *9; <u>Stories Inc</u>. at *5.   However, in <u>Syncsort Inc. v. Innovative Routines International Inc.</u>, the Honorable William H. Walls held that a the pleading party is not required "to name a specific prospective customer or contract with which another party interfered.  The Court is not convinced, however, that such specificity in pleading is required under the notice pleading standard."  2005 WL 1076042, at * 12 (D.N.J. 2005).  Similarly, in <u>Floorgraphics Inc., v. News America Marketing In-Store Services, Inc</u>.,the Honorable Anne E. Thompson held that a plaintiff need not identify specific lost business opportunities in its pleading for tortious interference.  2006 WL 2846268, at * 6 (D.N.J. 2006)

For these reasons, although Defendant is correct that Plaintiff has not identified the potential purchaser or acquirer of Slim CD with whose purchase Heartland allegedly interfered, in light of the recent case law in this District suggesting that such specificity is not necessary, the Court will not dismiss Count III of Plaintiff's Complaint.  Indeed, Plaintiff has alleged that Defendants knew of Plaintiff's opportunity to sell the company, that Defendants unlawfully interfered with such opportunity, and that, as a result, Plaintiff suffered losses.  Therefore, at this early stage in the litigation, I will deny Defendant's Motion to Dismiss Count III.  However,

during discovery, Plaintiff will be required to disclose such information.

ii. <u>Count Five: Florida Trade Secrets Act</u>

Count Five of Plaintiff's Complaint sets forth a claim for Misappropriation of Trade Secrets under the Florida Trade Secrets Act, Fla. Stat. Ann. § 688.001, et. seq.  Defendant contends that this Court should dismiss Count Five of Plaintiff's Complaint under choice of law principles because Florida law does not apply.  Specifically, Defendant argues that Plaintiff failed to identify the place where the misappropriation occurred.  Moreover, Defendant argues that to the extent that the Complaint identifies a place of injury, that place would be New Jersey, Heartland's principal business location.  In other words, because Heartland is headquartered in New Jersey, Heartland argues that the alleged misappropriation could not have occurred in Florida, thus Florida law could not apply.  Plaintiff, on the other hand, alleges that it is too early in the litigation to conduct a choice of law analysis with respect to Count Five because no discovery has occurred regarding this cause of action.  The Court agrees.

In tort cases, New Jersey courts apply a governmental-interest analysis to determine choice-of-law questions.  <u>See</u>, <u>e.g.</u>, <u>Veazey v. Doremus</u>, 103 N.J. 244, 247, 510 A.2d 1187 (1986).  A governmental interest analysis approach selects, as the determinative law, that jurisdiction with the greatest interest in the resolution of the underlying controversy.  <u>See</u> <u>D'Agostino v. Johnson & Johnson</u>, 559 A.2d 420, 429 (N.J.Sup.Ct.1989).  However, it is well-established that, without the benefit of discovery or legal briefing, it is premature for a court to conduct a choice of law analysis as a threshold matter.  <u>Rehabcare Group East, Inc. v. Trenton Convalescent Operating Co.</u>, 2006 WL 2711496, at *1 (D.N.J. Sept. 20, 2006); <u>see</u> <u>D'Agostino</u>,

559 A.2d at 429 (providing that "without discovery, any evaluation of what law applies to this case would also be premature").

In the instant matter, Slim CD was granted leave to add Count Five, the trade secret claim, in January 2007, and an amended complaint was filed in this matter on January 23, 2007. Thereafter, on February 23, 2007, Defendant filed the instant Motion to Dismiss Count Five. In light of this timing, the Court notes that there has been little opportunity for discovery on the newly added Count Five. Moreover, although Heartland is a Delaware Corporation with its principal place of business in Princeton, New Jersey, Slim CD is a Florida corporation with its principal place of business in Coral Springs, Florida. Thus, discovery could reveal numerous facts relating to Heartland's alleged misappropriation of trade secrets and the place where said misappropriation allegedly occurred. For these reasons, the Court finds that to dismiss Count Five, at this early date, prior to discovery, would be premature. In the absence of any discovery, there are insufficient facts available for this Court to determine the extent to which Florida law might apply to aspects of this case. For these reasons, Defendant's Motion to Dismiss Count Five is denied.

B. <u>Slim CD's Motion to Strike or Dismiss Defendant's Amended Answer and Counterclaims</u>

i. <u>Slim CD's Motion to Strike Defendant's Amended Answer and Counterclaims</u>

In the instant matter, Plaintiff, Slim CD, asks this Court to Strike Heartland's Amended Counterclaims and Defenses. Specifically, Plaintiff contends that in response to its Amended Complaint which added a single new count for misappropriation of trade secrets, Defendant filed

a response comprising 42 new paragraphs, five new counts and ten new affirmative defenses. Thus, Plaintiff argues that with the exception of the paragraphs that respond to Plaintiff's newly added cause of action, Heartland's answer should be stricken in its entirety pursuant to Fed. R. Civ. P. 15 and 16. The Court does not agree.

Rule 15(a) states, in relevant part, that "[a] party shall plead in response to an amended pleading ... within 10 days after service of the amended pleading." Fed.R.Civ.P. 15(a). To resolve whether Heartland was required to seek leave of the court to add its counterclaims, the court must answer the threshold question of what parameters Rule 15(a)'s "in response to" language places on the ability of parties to file responses to an amended complaint.  This is a matter that remains unsettled in the Third Circuit.  Indeed, no appellate court has squarely addressed whether counterclaims filed in response to an amended complaint pursuant to Fed. R. Civ. P. 15 must be permitted as of right or only with leave of court, and district courts have taken variant positions on the issue. See, e.g., Uniroyal Chem. Co. v. Syngenta Crop Prot., Inc., 2005 WL 677806, 2005 (D.Conn. March 23, 2005) (discussing three competing approaches and adopting "moderate" view).

Courts that have interpreted the rule permissively have held that once a plaintiff amends a complaint, the defendant always has a right to amend to bring new counterclaims, without regard to the scope of the amendments. See, e.g., American Home Prod. Corp. v. Johnson & Johnson, 111 F.R.D. 448, 453 (S.D.N.Y.1986) (holding that a defendant is entitled to respond to an amended complaint even with "eleventh-hour" additions). Courts that have interpreted the rule narrowly have held that an amended counterclaim must be confined specifically to responses that are related to changes in the amended complaint. See, e.g., Nolan v. City of Yonkers, 1996 WL

11

120685, at *4 (S.D.N.Y.1996) ("Defendants [do] not have a right to assert new counterclaims unrelated to the amendment in their answers ... in the same way that they had a right to assert counterclaims in their original answer."). Finally, the moderate view is that an amended response may be filed without leave only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint. Thus, if substantial changes are made to the complaint, then substantial changes may be made to the response. Uniroyal, 1996 WL 120685, at *4. Importantly, the Court notes that not only is this moderate approach predominant in the case law, see id. at 2005 WL 677806, at *2 (citing cases), the requirement that an amended response reflect the change in theory or scope of the amended complaint is consistent with Rule 15's requirement that an amended pleading must "plead in response " to the amended pleading. 1996 WL 120685, at *4-5. Commentators also agree that the moderate view is the appropriate view; indeed, according to Moore's Federal Practice, "[n]ormally, a party responding to an amended pleading must 'plead in response' to the amended pleading, and must request leave of court if it wishes to add any new counterclaims in its response to the amended pleading." See 3 James W. Moore, et al., Moore's Federal Practice § 15.17[6] (3d ed.1997). Yet, "when a plaintiff's amended complaint changes the theory of the case, it would be inequitable to require leave of the court before the defendant could respond with appropriate counterclaims." Id.

Applied here, the Court finds that Defendant's Amended Answer and Counterclaim is permissible in light of Plaintiff's Amended Complaint.  Specifically, Defendant's Amended Complaint added a new claim for Misappropriation of Trade Secrets alleging that "Heartland misappropriated trade secrets of Slim CD by using improper means to acquire knowledge of Slim

12

CD's trade secrets and utilizing said trade secrets to the disadvantage of Slim CD."  Pl's Am.

Compl. ¶ 71. Moreover, Slim CD contends that Heartland alleged misappropriation was willful

and malicious, and, as a result, Slim CD seeeks an award of exemplary damages.  Id. ¶ 78.  Thus,

Slim CD's amended complaint expanded the theory of the case, and,  defendants are entitled to

raise new claims and defenses.  See Uniroyal, 1996 WL 120685.  For these reasons, the Court

denies Plaintiff's Motion to Strike.


ii. <u>Slim CD's Motion to Dismiss Defendant's Counterclaims and for Summary Judgment on</u>

<u>Defendant's Breach of Contract Counterclaim</u>

In addition to its Motion to Strike, Plaintiff argues, in the alternative, that the Court

should dismiss all 12 of the Counterclaims set forth in Defendant's Amended Answer.  In

addition, Plaintiff argues that the Court should grant Slim CD summary judgment on Heartland's

Breach of Contract claim and in favor of Plaintiff's Breach of Contract claim.

As discussed above, Federal Rule of Civil Procedure 12(b)(6), allows a court to dismiss a

complaint may for failure to state a claim upon which relief can be granted.   See supra pp. 5-6.

In addition, summary judgment is appropriate where there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue of material fact is one that

will permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  To show that a genuine issue of material fact exists, the

nonmoving party may not rest upon mere allegations, but must present actual evidence in support

thereof.  Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290

(1968)).  In evaluating the evidence, the Court must view evidence and draw inferences "in the light most favorable to the party opposing the motion."  Waldorf v. Shuta, 896 F.2d 723, 728 (3d Cir. 1990) (quoting Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

In light of Plaintiff's request that this Court dismiss each and every one of Defendant's counterclaims,  the Court will consider each counterclaim in turn.

1. Heartland's Breach of Contract Counterclaim

Plaintiff argues that the Court should dismiss, or in the alternative, grant summary judgment for Plaintiff on Heartland's Breach of Contract Counterclaim.  Initially, Plaintiff argues that Defendant's Breach of Contract claim is not sufficiently plead pursuant to Fed. R. Civ. P. 8. The Court does not agree.

As discussed above, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  Moreover, despite Plaintiff's assertions to the contrary, the Federal Rules do not require a plaintiff to include the contract with the complaint, or allege specific provisions violated in the contract.  Rehabcare Group East, Inc. v. Trenton Convalescent Operating Co., 2006 WL 2711496, at *2; see also In re Tower Air, Inc., 416 F.3d 229, 237 (3d Cir.2005) (stating "we recently rejected a [party's] argument that a complaint 'lacked sufficient factual support' with the terse declaration that a plaintiff need not plead facts."). In the instant matter, Defendant's breach of contract counterclaim alleges that: (1) the parties entered into a contract for the purchase and sale of computer software; (2) Slim CD breached the contract by installing "spyware"; (3) the product did not meet the functional specifications set forth in the contract; (4) and that as a result, Defendant is entitled to

14

cancellation of the contract and restitution.  For these reasons, the Court finds that Defendant's Breach of Contract Counterclaim is sufficiently plead.

In the alternative, Plaintiff asks this court to grant Summary Judgment in its favor on Heartland's Breach of Contract Claim and in favor of Plaintiff's Breach of Contract Claim pursuant to Fed. R. Civ. P. 56.  Specifically, Plaintiff contends that Defendant: (1) received the software under the contract; (2) did not make use of the rejection process set forth in the contract; (3) used the software for months following delivery.  Thus, Plaintiff argues that there is no issue of fact regarding the breach of contract and asks this Court to grant summary judgment dismissing Defendant's breach of Contract claim and in favor of Plaintiff's breach of contract claim.  The Court does not agree.

To begin, the Court notes that there are substantial issues of material fact that preclude summary judgment.  In light of the affidavits submitted by Heartland, there are issues of material fact surrounding whether or not the software provided by Slim CD was adequately tested and whether it met the functional specifications described in the underlying agreement.  Barnhart Aff. ¶ 6-7.  Based on these alleged inadequacies, there is an issue of fact as to whether the software could be considered "Delivered Software" pursuant to the Software Development and License Agreement ("Agreement"), Bonfield Decl., ex. B.  Id.  Moreover, in an affidavit submitted with Heartland's briefing, Nancy Barnhart, the manager in charge of the Slim CD project, stated that despite the explicit agreement provision that requires that Slim CD provide the final version of the software in four phases, various components of the software did not work and Slim CD never provided the final version. Barnhart Affidavit ("Barnhart Aff.") ¶¶ 10-16.  Further, Barnhart contends that Plaintiff never asked Defendant to formally accept or reject the software and that

15

based upon the faulty condition of the software, it would not have been possible for Defendant to accept the software within 15 days as required under the contract.  Id. ¶¶16-18. Thus, Heartland argues that it never officially accepted Phase I, and, furthermore, Heartland contends that it encountered the same problems with Phases II-IV.  For these reasons, the Court finds that there are issues of fact regarding the agreement at issue in this case which preclude summary judgment at this early stage in the litigation.

## 2. Heartland's Fraud, Equitable Fraud and Consumer Fraud Counterclaims (Counts Four, Eight, Nine and Twelve)

In addition, Plaintiff argues that Defendant's claims for fraud, equitable fraud and consumer fraud should be dismissed.  Initially, Plaintiff claims that Defendant's fraud and equitable fraud claims are barred by the equitable loss doctrine and have not been pled with specificity as required by Fed. R. Civ. P. 9(b). In addition, Plaintiff claims that Defendant's claims for consumer fraud should be dismissed because: (1) the underlying transaction is not a "consumer transaction" within the definition of the CFA; (2) Heartland has failed to allege the requisite aggravating circumstances needed to distinguish the CFA claims from the breach of contract claims; and (3) the counterclaims have not been pled with specificity under Fed. R. Civ. P. 9(b).  The Court will consider each claim in turn.

## I. Fraud (Count Four)

The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which they are entitled only by contract. Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 310

(2002).  "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Id. at 316 (citations omitted). New Jersey courts have struggled with the viability of fraud claims to recover for purely economic loss.  Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F.Supp .2d 557, 562 (D.N.J.2002). Indeed, the "critical issue" is whether the conduct is "extraneous to the contract." Bracco, 226 F.Supp.2d at 563.  However, a mere "subsequent failure of the promisor to do what he has promised" is not recoverable in tort. Id.  Federal district courts interpreting New Jersey common law routinely hold that "fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." Id. at 564 (citing Gleason, 243 F.3d at 144)). For example, one district court explained that "an act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be." Id. (citing Emerson Radio Corp. v. Orion Sales, Inc., No. 95-6455, 2000 WL 49361, at *7 (D.N.J.2000)). The Emerson court further illustrated "with the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud." Id. (citing Emerson, 2000 WL 49361, at *7).

In the instant matter, as discussed above, Defendant's counterclaim for fraud (Count Four) is, at its core, essentially a breach of contract claim.  Specifically, although the language contained in Count Four couches the contract claim as a claim for fraud in the inducement, a closer look reveals that this cause of action is not separate and distinct from Defendant's contract based claims. For example, Count Four provides that  that Plaintiff agreed to develop, install and license computer software that would allow Defendant to process the credit card transactions of

17

customers free of outside vendors.  Subsequently, Defendant alleges that the software contained

spyware and other bugs and defects.  Thus, Defendant essentially argues that the software did not

meet the specifications set forth in the agreement.  The Third Circuit recently held, "[t]he

economic loss doctrine is designed to place a check on limitless liability ... and [to] establish

clear boundaries between tort and contract law." Werwinski v. Ford Motor Co., 286 F.3d 661,

680 (3d Cir.2002). The Third Circuit further stated that where there are two competing and

sensible interpretations of state law, district courts "should opt for the interpretation that restricts

liability, rather than expands it." Id.  Therefore, I  find that the economic loss doctrine bars Count

Four of Defendant's claim for Fraud, and the Court grants Plaintiff's motion to dismiss Count

Four of Defendant's Counterclaim[1].


ii. Equitable Fraud (Count 12)

        In Count Twelve, Defendant sets forth a claim for Equitable Fraud.  In general, equitable

fraud requires proof of: (1) a material misrepresentation of a presently existing or past fact; (2)

the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party.

Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981). Unlike a claim for legal fraud,

there need not be proof that the statement was made with knowledge that it was false. Id. In other

words, a party seeking rescission based on equitable fraud need not prove "knowledge of the

falsity and an intention to obtain an undue advantage therefrom." Bonnco Petrol, Inc. v. Epstein,

_____

        [1]Because I am dismissing Defendant's fraud claim pursuant to the economic loss
doctrine, the Court need not reach the issue of whether Plaintiff's claim for fraud  meets the
heightened pleading standards for a fraud claim as required by Federal Rule of Civil Procedure
9(b).

115 N.J. 599, 609 (1989) (citation omitted). "Even an innocent misrepresentation can constitute equitable fraud justifying rescission." Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 635, 651 A.2d 92 (1995).

Where a party sets forth a claim for fraud, the Federal Rules require that these claims are pled with specificity. Fed. R. Civ. P. 9(b). To satisfy the Rule 9(b) specificity requirement, a party must provide additional information such as the date, time, and place of the alleged fraud or who was responsible for the fraud or otherwise inject precision or some measure of substantiation into her fraud allegations. See Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir.2004); NN & R, Inc. v. One Beacon Ins. Group., 362 F.Supp.2d 514, 518 (D.N.J.2005). Further, the party making the allegations must detail who made the purported misrepresentations and what specific misrepresentations were made. See Lum, 361 F.3d at 224; NN & R, Inc., 362 F.Supp.2d at 518.

In the instant matter, Defendant's Count Twelve suggests that Slim CD misrepresented that the software it developed would be suitable to meet Heartland's needs; however, Defendants do not set forth with any specificity the nature of these alleged misrepresentations. Indeed, the Court notes that the Complaint does not set forth any facts concerning the subject matter of the statements, the identity of the speaker, or the time and place where the statements were made. Indeed, the sole allegation regarding the statements is that "Slim CD knowingly misrepresented that the software it developed...would be suitable," that following these alleged statements, Heartland entered into a contract with Slim CD, and that the software that was produced under the contract was not, in fact, suitable. For these reasons, Defendant's Claim for equitable fraud is dismissed, without prejudice, for failing to meet the heightened pleading standard embodied in

Fed. R. Civ. P. 9(b).

iii.  New Jersey Consumer Fraud Act ("NJCFA") Counterclaims (Counts Eight and Nine)

In addition, Plaintiff contends that Defendant's claims under the Consumer Fraud Act should be dismissed because: (1) the underlying transaction is not a "consumer transaction" within the definition of the CFA; (2) Heartland has failed to allege the requisite aggravating circumstances needed to distinguish the CFA claims from the breach of contract claims; and (3) the counterclaims have not been pled with specificity under Fed. R. Civ. P. 9(b).

To begin, the Court finds that the NJCFA applies to the transaction at issue in this case. The Consumer Fraud Act is intended to protect consumers who purchase "goods or services generally sold to the public at large." Marascio v. Campanella, 298 N.J.Super. 491.  The entire thrust of the Act is "pointed to products and services sold to consumers in the popular sense." Neveroski v. Blair, 141 N.J.Super. 365, 378, (App.Div.1976).  While the term "consumer" has historically connoted an individual purchaser, the Act has been interpreted to afford protection to corporate and commercial entities who purchase goods and services for use in their business operations. See Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J.Super. 171  (App.Div.1994). Moreover, courts have held that "it is the character of the transaction rather than the identity of the purchaser which determines if the [CFA] is applicable."  Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc., 87 F.Supp.2d 394, 400 (D.N.J.2000) (citations omitted). "The Act does not exclude business entities from its protection so long as they are 'consumers.'" City Check Cashing, Inc. v. Nat'l State Bank, 244 N.J.Super. 304, 309 (App.Div.1990) (citations omitted). "However, to be a consumer respecting the transaction in question, the business entity must be

20

'one who uses (economic) goods, and so diminishes or destroys their utilities.'" Id. (citations omitted).

In the instant matter, the underlying transaction concerns an agreement for the sale of software from Slim CD to Heartland to enable Heartland to process credit card transactions for its customers independent of outside vendors. See Def's Am. Ans. ¶ 95. Thus, it appears that Defendant did not intend to "resell" the good, but, instead, intended to use the software itself. For these reasons, the Court finds that the CFA applies to the transaction at issue in this case.

Moreover, the Court finds that, unlike the claim for equitable fraud, Defendant has pled this claim with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).  The pleading requirements of Rule 9(b) apply to Defendant's NJCFA claims as well as its common law fraud claims. See F.D.I.C. v. Bathgate, 27 F.3d 850, 876 (3d Cir.1994). There are three general categories of unlawful practices under the NJCFA: (1) affirmative acts, (2) knowing omissions, and (3) regulation violations. N.J.S.A. § 56:8-2, § 56:8-4. When the alleged consumer fraud violation consists of an affirmative act, it is not necessary for the plaintiff to prove that the defendant intended to commit an unlawful act. Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J.1997). However, when the alleged consumer fraud consists of an omission, intent is an essential element of the charge. Id. at 366. An affirmative misrepresentation under the NJCFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Mango v. Pierce-Coombs, 851 A.2d 62, 69 (N.J.App.Div.2004) (cites and quotes omitted).

In the instant matter, Defendant contends Plaintiff allegedly concealed the existence of the Spyware. Specifically, Heartland generally alleges that "Slim CD knowingly concealed,

21

suppressed or omitted facts material to Heartland's purchase of the computer software. . . in that it failed to disclose the existence of the secret and unauthorized 'Spyware' program, that the computer software contained errors, bugs, and defects, and that the computer software did not embody the functional specifications as set forth in the Contract." Def's Am. Ans.  ¶178.  Thus, the Court finds that Defendant has alleged acts under the NJCFA with sufficient specificity to withstand Plaintiff's Motion to Dismiss.

4. Heartland's Negligent Misrepresentation Counterclaim

Plaintiff additionally asks this Court to dismiss Defendant's counterclaim for negligent misrepresentation as barred by the Economic Loss Doctrine.  As discussed above, the economic loss doctrine bars a claimant from recovering in tort economic losses to which it is entitled only by contract. However, courts in this district have held that fraudulent or negligent misrepresentations that induce a plaintiff to enter into the contractual agreement may still be the basis for a tort claim, as such a claim would not be barred by the economic loss doctrine. Parrino v. Swift, No. 06-0537, 2006 WL 1722585, at *8-10 (D.N.J. June 19, 2006).  In the instant matter, Defendant contends that Plaintiff negligently suppressed information that the software provided to Heartland contained numerous errors, bugs and defects and did not embody the functional specifications set forth in the contract.  Because this claim for negligent misrepresentation relates merely to a "subsequent failure of the promisor to do what he has promised," this claim "is not recoverable in tort." Parrino, at *8 (quoting Bracco, 226 F.Supp.2d at 563). Therefore, I will dismiss Heartland's claim for Negligent Misrepresentation.

5. <u>Heartland's Conversion Counterclaim</u>

Next, Plaintiff contends that this Court should dismiss Defendant's claim for conversion of confidential business information transmitted through the computer software supplied by Plaintiff to the Defendant.  Conversion "is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." <u>Advanced Enters.</u> <u>Recycling, Inc. v. Bercaw</u>, 376 N.J.Super. 153, 161 (App.Div.2005).  Moreover, "[t]he tort[ ] of conversion ... relate[s] to interference with tangible rather than intangible property...." <u>Video</u> <u>Pipeline, Inc. v. Buena Vista Home Entm't, Inc</u>., 210 F.Supp.2d 552, 568 (D.N.J.2002).

Here, Defendant claims that Plaintiff is liable under a conversion theory because Plaintiff unlawfully took customer transaction data transmitted to the Heartland Gateway and that Heartland suffered damages as a result.  However, Defendant has not alleged that any tangible property was converted; instead, the only property at issue here is intangible customer transaction data transmitted via computer to Heartland.  Moreover, courts in this District, have held that intangible property cannot be the subject of a conversion claim.  <u>K-Tronik N.A., Inc. v.</u> <u>Vossloh-Schwabe Matsushita</u>, 2006 WL 1281291 at *3 (D.N.J. May 10, 2006) (holding that customer lists identifying customers, market information on customer purchases and sales prices, and customer service procedures did not constitute tangible property for purposes of a conversion claim); <u>Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.</u>, 210 F.Supp.2d at 568 (quoting Nimmer on Copyright for the proposition that "[t]he torts of conversion and trespass relate to interference with tangible rather than intangible property...." 1 Nimmer on Copyright ¶ 1.01[B][1][i], at 1-41 (2001)). For these reasons, the Court will dismiss Heartland's counterclaim for conversion.

6. Heartland's Counterclaims for Unfair Competition and Misappropriation

Next, Plaintiff contends that Defendant's claims for Unfair Competition and Misappropriation of Trade Secrets should be dismissed. Specifically, Plaintiff contends that both causes of action require that the parties be competitors; however, Plaintiff contends that the parties are not competitors and, for this reason, the Court should dismiss these claims.  The Court does not agree.

To begin, as  Defendant points out, Plaintiff's Complaint specifically alleges that the parties were competitors: "Heartland also failed to stop selling desktop and virtual terminal products competitive with Slim CD's Merchant Products. . ."  Pl's Am. Compl.¶ 29.  Thus, Plaintiff's suggestion that the parties are not competitors appears disingenuous.  Moreover, Defendant has pled the elements of these two causes of action sufficiently to withstand Plaintiff's Motion to Dismiss.  Finally, to the extent that Plaintiff also asks this Court to grant Summary Judgment in its favor on these claims, the Court finds that there are issues of fact that preclude a grant of summary judgment at this time.


7. Heartland's Counterclaims under the Computer Fraud and Abuse Act

Counts One and Ten of Defendant's Counterclaim set forth claims pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the New Jersey Computer Fraud and Abuse Act, N.J.Stat. Ann. §  2A:38A-3. Specifically, pursuant to the CFAA, Heartland contends that Slim CD intentionally installed unauthorized Spyware on the software provided to Heartland that allowed Slim CD to divert confidential customer data to a server maintained by Slim CD.  Def's Am. Ans. ¶ 129.  Similarly, pursuant to the NJ Computer Fraud And Abuse Act,

24

Heartland contends that Slim CD unlawfully attempted to access Heartland's computer system within the meaning of § 2A:38A-3(c) and suffered damages as a result. Id. ¶¶ 192-194.  In the instant Motion to Dismiss, Slim CD argues that this Court should dismiss these causes of action because Defendant has not established how Plaintiff used this information for its own benefit. See Pl's Br. at 28. Because the express language of the statute does not require such a showing, however, the Court will not grant Plaintiff's Motion.

Indeed, New Jersey state law provides that an enterprise "damaged in business or property" as a result of "[t]he purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network," may recover damages. N.J. Stat. Ann. § 2A:38A-3(a).  Similarly, 18 U.S.C. § 1030(a)(2) provides that whoever "intentionally accesses a computer without authorization" is liable to the injured party for damages. In light of the clear language of the statute and Defendant's pleading, and at this early stage in the litigation, the Court will not dismiss Defendant's Counterclaims under the CFAA or the New Jersey Computer Fraud and Abuse Act.  Moreover, to the extent that Plaintiff asks this Court to grant Summary Judgment on Heartland's CFAA for failing to put forth evidence of damages in excess of $5,000, the Court denies Plaintiff's motion.  Specifically, section 1030(a)(5)(B)(I) of the CFAA requires a claimant to show "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  In its pleadings, Defendant contends that it suffered damages in excess of $5,000 within a 1-year period.  Def's Am. Ans. ¶ 132. Thus, at this early stage in the litigation, prior to the completion of discovery, the Court will deny Plaintiff's claim for summary judgment.

8. <u>Heartland's Counterclaim for Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Finally, Plaintiff asks this Court to dismiss Count Seven of Defendant's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing.  Under New Jersey law, all contracts carry an implied term that the parties to the contract will act in good faith. <u>See</u>, <u>e.g.</u>, <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 690 A.2d 575, 587 (N.J.1997). New Jersey case law has recognized the potential for such an independent cause of action based upon the covenant of good faith and fair dealing in three situations: (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations; (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance.  <u>Barows v. Chase Manhattan Mortg. Corp.</u>,465 F.Supp.2d 347, 365 (D.N.J.2006) (<u>citing</u> <u>Seidenberg v. Summit Bank</u>, 791 A.2d 1068, 1077 (2002)).

In the instant matter, Defendant alleges that Plaintiff intentionally installed the spyware program without any legitimate purpose, maliciously and in bad faith.  Because of this, Heartland contends that Plaintiff breached the covenant of good faith and fair dealing implied under New Jersey law.  Defendant's allegations are sufficient to support this claim and I will deny Plaintiff's Motion to Dismiss.

**III. Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss Counts Three and Five of Plaintiff's Complaint is denied.  Moreover, Plaintiff's Motion to Strike or Dismiss Plaintiff's Answer and Counterclaims is denied in part and granted in part. Specifically, the Court denies in full Plaintiff's Motion to Strike Defendant's Answer and Counterclaims.  However, the Court grants Plaintiff's Motion to Dismiss as to Count Three (Conversion), Count Four (Fraud) and Count Five (Negligent Misrepresentation).  In addition, the Court will dismiss without prejudice Count Twelve for the reasons set forth above.  However, the Court will deny Plaintiff's Motion on Defendant's remaining Counterclaims.  An appropriate order will follow.


Dated: August 22, 2007                                    /s/ Freda L. Wolfson
                                                          Honorable Freda L. Wolfson
                                                          United States District Judge


27